May it please the court, my name is John Funk. I represent the plaintiff appellants in this action, Charles and Rita Bernard. Knowing that the court is familiar with the facts of the case, I would like to focus my arguments today on why the district court erred in granting summary judgment on the excessive force claims. This case is a straightforward application of Anaheim v. Drummond and Davis v. The City of Las Vegas. In this instance case, the officers escalated a situation by executing a high risk warrant outside of their geographical jurisdiction. The warrant itself was executed late at night while Charles and Rita were asleep in their home. The officers involved in this lacked training regarding the execution of high risk warrants. In fact, one of the officers, Clark, was previously reprimanded. None of the officers, as I mentioned, were properly trained in the serving of the high risk warrants. And what's interesting in this case is we have three independent eyewitnesses who create a factual difference, one that the jury needs to consider because we're dealing with different accounts. As you look through the evidence, the officers all give three different renditions of their accounts of the incident that occurred that night, whereas the eyewitnesses to this give accounts that relate primarily with the incident. The eyewitnesses to this give accounts that relate primarily with Mr. Bernard's account. I'd like to focus my arguments initially beginning with qualified immunity, then I'd like to go to the state law causes of action, and then briefly touch on Monell and then reserve the remainder of my points here. Under Saucier v. Katz, looking at qualified immunity, whether an officer is entitled to qualified immunity, the court must decide in the light most favorable to the officer's conduct violated a constitutional right. If so, the court then must determine whether the right violated was clearly established so that it would be clear to a reasonable officer that his conduct was unlawful. Here, Mr. Bernard claims that the officers violated his rights under the Fourth Amendment. Now, this is analyzed under Graham v. O'Connor framework, which looks at the reasonableness standard and requires a balancing approach to the nature and the quality of the intrusion on a person's liberty with the countervailing governmental interest to determine whether the force was objectively reasonable. So, considering the facts in the light most favorable to your clients, when did the police cross the line in your judgment? I think that they crossed the line even prior to the encounter beginning. Part of it they haven't used force yet, so it's not excessive. Well, and if we're looking specifically at just the excessive force mark, what you have is, I think if you look at, I believe it's under Smith v. the City of Hemet, the court says that you can consider the availability of alternative methods for subduing and capturing a suspect. What we have here is the officer's approach late at night. We have an individual who is at home in bed with his wife when he gets a knock at the door, and he's concerned because he's a resident of Henderson, Nevada, and he's receiving a knock from officers who are asserting that they're from the jurisdiction of Las Vegas Metropolitan Police Department. You have an individual who is not a criminal, he does not have a warrant out for his arrest, and he's cautious because he's concerned because these officers, or these claimed individuals who are from north of Las Vegas Metropolitan Police Department are knocking on his doors. And the warrant is for his brother, and he knows his brother is right in the house. That is correct, Your Honor. But at the same time, he's concerned because he doesn't know that his brother has a prior criminal record or history there that he's testified to on the case. He knows what an arrest warrant is, everybody does. At what point, setting aside whether or not their supervisor told them to travel from Las Vegas to the short trip to the jolly city of Henderson, and setting aside for a moment the time, which time seems to not be too critical here, they had a right to knock on the door and say, I'm not David, I'm Charles. And they are not sure about that, and they want to check on it. That is correct, Your Honor. Now, they've got a high-risk warrant because bail was set very high, so they can assume whomever they're looking for could cause them damage. So they decide until they sort this out, they're going to handcuff Charles. Now, the problem, as I see it, in whether or not they have the right person is the weight issue. David is a person of large stature, according to the record, 220-230. His brother apparently testified he was 172 pounds. And so the issue is whether it's reasonable to believe that this 172-pound person may be the one who was described to them as a 220. And it's interesting you bring that up, Your Honor, because if you look at the facts regarding what happens, they tell Mr. Bernard, Charles Bernard, that if you didn't open the door, we're going to kick the door open. At that point, he complies, he opens the door, he steps out where there are three drawn guns pointed at him, and he recognizes that these officers are obviously in an agitated state because they're now using expletives. He slowly raises his hand, and he says, Mr. Bernard, I have a different question. I'm just talking about whether they're mistaken on Charles being the possible David. So assume that you have an issue that should go to the jury, that it can't go by summary judgment. Make that assumption. The question I have for you is to get to qualified immunity, do you have to wait and let the jury make that decision? Or could the district judge assume that there was a mistaken identity that was not rational, and then move directly to the qualified immunity issue? Now, are you addressing specifically the issue with the arrest warrant? That's correct. Just whether or not there's a mistake. I believe that one of the issues that we have is that the arrest warrant here, still whether or not you have an issue of mistaken identity is not the real issue. The issue here is the excessive force that was used in application. That's the second issue, is excessive force. But I want you to focus just for a minute on mistaken identity. Do we have an issue of fact to go to the jury as to whether or not they made a reasonable assessment that Charles might be David, when Charles, we have to assume at this point, is 172 pounds and David's 220? I think you clearly have a factual issue there regarding the descriptions of the two individuals. You have one who has light hair, different colored eyes, the other one who has a larger build, different color eyes and hair as well. Okay, so can the district judge assume, for the sake of what he's going to do, that you're right? If it went to the jury, they'd find there's a mistaken identity. Can he at that point make his assessment of whether or not there's qualified immunity? I believe that he could. You believe he could? Well, let me recant back. I believe still there's issues of fact there that put him in the position where he should not address that issue of qualified immunity, because we do have the independent eyewitnesses there that create the issue of fact or the dispute of fact. Well, okay, so you get a question of fact, you have to go to the jury. But the idea of qualified immunity, if it applies, is to not go to a trial if there's qualified immunity. So I'm just asking you, if he gives you the point that it was a mistaken identity and it was not reasonable, can he then decide the qualified immunity issue? I don't believe that he can, Your Honor, because that gets into the issue with dealing with the excessive force, where there is that reasonable dispute. No, no, no. Excessive force is still there. You may have to go to the jury on that one. I'm just talking about the one issue, if you could just stay with me there for a minute. Can the judge then make a determination that, okay, I'll give you the point, but I'm going to decide qualified immunity at this time? And that's just dealing with the mistaken identity, correct? Pardon? Is that just dealing with the mistaken identity as to the arrest warrant? Yeah, yeah. He has you win the point, but he wants to decide whether the officers had qualified immunity. I believe that he still could decide that issue, Your Honor. He could do that. Okay. All right. Thank you. All right. As we get to the issue which we believe is the primary issue at hand, which is the unreasonable force in this case, I think counsel is going to present evidence that when you have a mistaken identity here, you can still serve a facially valid warrant. What we have, however, is Mr. Bernard is an individual who, as I've previously pointed out, does not have a criminal record, does not have a criminal history, as he's being confronted by these officers. But at the moment, whether regardless of who they think he is at that point, even if they knew he was only the officer, the brother, and believed he was trying to hide or assist his brother, don't they have the right to make sure that he doesn't get in the way when they get to the actual brother? But the thing is that the facts don't support the facts that you're alluding to that he was trying to get in the way. As he walks out, he is compliant with everything that they say. In fact, the eyewitnesses tell him, over here in the state, calm down. The point is, either way, whether he's this person or not, don't they have the right to handcuff him? They do, Your Honor. Okay, so I'm going to go all the way back to the question that Judge Thomas asked you about ten minutes ago. When did force become excessive in the process of handcuffing him? The force becomes excessive after he's compliant with all their requests. He's asking them to calm down, calm down, and then as soon as they go hands-on, they pull him to the ground. At that point, we have an altercation that ensues, where during it, he's continuing to say, calm down, this isn't necessary, calm down. And they begin to apply excessive force to the point of a choke hold around his neck. And they eventually put him into a position, I'm running out of time, where they've got him in a prone position where he is now handcuffed behind his back with his knees against his chest and there is pressure being placed against the back of his neck, which results in injury to the cervical spine area. The excessive force occurs after that because you hear from the accounts of the eyewitnesses that there was the escalation there and Charles was attempting to try to calm them down and to try to de-escalate the problems that were going on here. So I believe that that's where the excessive force begins, is as soon as they go hands-on with this individual. They're escalated, they're not properly trained for dealing with these high-risk situations. I'd like to reserve the remainder of my time. Good morning, Your Honors. My name is Peter Angulo and I represent the Las Vegas Metropolitan Police Department officers Clark, Radmonovich and Theobald in this matter. We have submitted in the briefs to the court that Judge Sandoval was correct in reaching summary judgment in this case. Both as to the terms of the initial contact by these officers, the use of force they had in their encounter with Mr. Bernard and the ultimate placing of charges against him. The last is actually decided that the charges brought against him was resisting an officer. In a preliminary hearing, Judge Burr held that there was sufficient evidence to believe that that fact had occurred. Probable cause existed for that charge. And as we cited to the court, the Hopp v. Dillard case clearly indicates that that becomes a binding decision that leads us to the issue of whether there was probable cause for these officers to objectively believe that the crime had been committed, which was resisting. Well, even if someone is resisting and even if there's cause to arrest them, there can still be a valid excessive force claim brought, correct? There can be, Your Honor, there's no question. So it doesn't eliminate as a matter of law the possibility of an excessive force claim. That's correct. And with respect to that claim, don't we have to look at the facts in the light most favorable to the plaintiff insofar as it deals with the amount of force that was used and the injuries caused and all of that? You do, Your Honor, in light of the evidence presented. So when we do that, explain to me why there isn't an issue of fact as to whether the amount of force ultimately used wasn't excessive in the particular body position that he was placed in and the harm to his neck and so on and so forth. Certainly. Beginning at the end of the question, the harm to the neck, there wasn't any evidence presented before Judge Sandoval, no medical evidence at least, that there was any relationship between any injury to this neck and the actions of these officers. To the contrary, the evidence clearly showed that that injury occurred almost a year later, in November of the following year. And so what you have then is simply the plaintiff's description to the extent that, again, it was evidence before Judge Sandoval. We've raised this issue to the Court in our brief. There are a number of documents that the appellants provided in their initial brief that were simply never provided to Judge Sandoval. But from the evidence that was given to him, the event that occurs is this. He admits that as Officer Theobald begins to go down and they're connected to one another and going down, that he could see that the other officers believed something was going on, that there was an altercation occurring between the two of them. That event, that going down event is seen by one witness. There's been comments made about three witnesses being in complete harmony. We only have the testimony of Sean Frerer, who sees what occurs. We provide those citations to the Court as part of our experts on appeal. But as they go down, the altercation is that one officer is trying to get Mr. Bernard off of Officer Theobald. They're trying, and the plaintiff admits that the officers on both sides are trying to get his arms out from underneath him. And so there's a suggestion at least that he's resisting that. They struggle to get his hands behind his back. He's resisting it. They apply pepper spray one time. He says he didn't resist, though. Don't we have to take him at his word on that? Well, what he says is that he did not start an altercation. The officers' version, their perception was that he starts a fight. And their descriptions are relatively different from one another. The fight that the officers described involves him placing his hand on Officer Theobald's neck and trying to shove him down the stairs, and Officer Radmanovich testifying that he actually ran up the stairs and physically supported Officer Theobald from going down the stairs. That's the nonresistance that Mr. Bernard talks about. He does admit, however, that the officers on either side have been trying to pull his arms out from underneath him. He's applied pepper spray one time, and then his arms are released, and he gets them in handcuffs, and then they're holding him on the ground. That's the sum total of this altercation. There are no blows to the head. Mr. Bernard claims that the effort for the officer behind him trying to pull him off of Officer Theobald utilizes what he calls a choke hold. Well, his version is the reason he can't get his arms out on his own is that Clark had all of his weight resting on him. In other words, his claim is that they made it impossible for him to comply and then maced him for failing to comply. But the perspective of Officer Theobald, who's the person who applies the pepper spray. Well, we have to look at this from the point of view most favorable to the plaintiff. I don't disagree, Your Honor, and that's what I'm telling the Court. The person who applies the pepper spray is Officer Theobald. He testifies that he's struggling to get the plaintiff's arms out from behind him, Mr. Bernard's arms out from underneath him, and that he can't do it. He applies the pepper spray to get him to release his arms. Mr. Bernard admits that the officers are struggling to try and get his arms out. Whether Officer Theobald knows that it's because somehow Officer Clark, in the few seconds this altercation lasts, is putting his weight on his back, isn't charged to Officer Theobald. He doesn't know about that. He's simply struggling to get the arm out, and his perception is that he's resisting doing that. So he applies the pepper spray to get compliance. And so you look at the light most favorable to the appellant without question. But given that light, these officers, believing this gentleman was armed and dangerous, believing he was the subject of this warrant that they were serving, or at least potentially the subject of the warrant they were serving, when they perceive this resistance, and if you look at the light most favorable to the appellant, he concedes that they could have perceived that this was an altercation beginning. They react immediately to get him off the officer who's going down, to get his hands behind his back, to bring him into custody, and then hold him in place until they can figure out what's occurred. Did they believe that he was armed? They believed that he was dangerous. Did they believe that he was armed? I don't know that they had a chance yet to pat him down, so they don't know whether they had or did not. Well, you just said that in your argument. That's why I was questioning where is the support for the fact that at the time of the macing and the handcuffing they actually believed he was armed. What I meant, Your Honor, was the information that they received on the warrant was that the individual should be considered armed and dangerous. That was the information that came out on the felony warrant, the MCIC that was sent out from Florida. And so they had that information, certainly had that knowledge to their own availability. And there's nothing in the record that suggests that they believed or they have never testified that they thought he had a gun. They knew it was a potential, I suppose, because of the information they had. But since they hadn't patted him down yet, they were still in the initial stages of contact with him, that would be an unknown to these officers. So he's an individual. It's certainly a high-risk situation. And, again, under the objective facts seen from the right of the plaintiff, again, he agrees that an officer could have perceived that something was going on here, that this was not simply an officer stumbling, but that something was occurring. And, again, we understand from Mr. Farrar's version of what occurs, that what's applied is not really a chokehold, but instead apparently an attempt, his perception was, an attempt by the officer behind him, Officer Clark, to scoop down and stop Mr. Bernard from falling to the ground and to catch him and bring him back up and then place him in handcuffs. The problem I see, and maybe you can help me out with this, is you keep using our version and their version. Once you get two versions, if it's material, you've got to go to the jury and we've got to reverse the summary judgment. Don't you have to take the argument that if you take all the evidence, believe all of the evidence in the light most favorable to Charles, that still no constitutional right was violated? Isn't that the rule? That's correct, Your Honor. And you have to take that position. Well, what I have, and perhaps I have not been articulate about my description between the various versions. While it's true you look at the light most favorable to the nonmoving party, in the context of this case, you also have to look at it from the perspective of an objectively reasonable officer, what's occurring. And that's why I've indicated to the court. But you take the facts that the plaintiff asserts that are supported in the record. So he says, they had me in a chokehold, they maced me twice, he used the word mace and pepper spray, and that two officers had knees on the back that caused him substantial injury. And at the time, he was compliant. If those facts, if that's the factual record, I'm obviously truncating it and his testimony goes a little bit all over the map. But if that's what we have, isn't there a tribal issue effect on excessive force? I would submit, Your Honor, that there is not. If under that factual assumption, tell me why there isn't. Certainly. Simply because Mr. Bernard believes that he's being compliant. In other words, from his standpoint, he's not trying to resist. The question still is, from the officer's use of force, what generates, what motivates that use of force? Counsel, he did more than just say he was compliant. He described it. For example, that he was saying things like, just relax, or don't get so upset because everything's okay, and that he was speaking to them in a way to reduce the tension of the situation. That was his testimony. I'm paraphrasing it. But it was more than just saying I was compliant. I don't believe, Your Honor, however, that testimony was presented to Judge Sandoval. I believe that's found in the appellant's excerpts of record. But I don't believe it was under the evidence that was presented to Judge Sandoval directly. The testimony that comes on that regard comes from Sean Ferrer. So how are we going to find out exactly what was in the district court record? We actually provided those in our excerpts of record. We included every exhibit that was attached both to our motion, to the appellee's motion, to the opposition, and to the reply. We've included those so the court could have before it the exact records that were, and pages that were included. So basically what you're, you know, we have this, now we have a full deposition that was taken, should be part of the record, and it's not, according to you. That's correct, Your Honor. Did the judge, did the district judge make a determination of qualified immunity on this part of the case? He did make a decision of qualified immunity. So you would be in the position, I take it, as we discussed earlier, that if there was a constitutional violation, that your fallback position would be that the judge was right in giving qualified immunity under the circumstance. That would be correct, Your Honor. Under sauciety, the analysis is first to see whether there's a constitutional violation. Yeah. Essentially a review of the summary judgment motion, a de novo review, and to see whether that's appropriate. The second element of that is. The saucier is a little troublesome because you're trying to get qualified immunity to see if the people have to go to trial. But then again, the author qualified of the saucier case wasn't a trial judge first, so those problems are more theoretical. But if we assume for sake of argument that all of the evidence shows a constitutional violation, then I take it your argument would be that the officers have qualified immunity under those circumstances. And under saucier, because the Court makes that first assumption, you can you would agree that they could go to qualified immunity, as your client said. I mean, as your adversary said. Correct. Thank you, Your Honor, for making that distinction. That's correct. The saucier allows the second step of that analysis is even if there is technically a constitutional violation, the second question is whether or not the officers were reasonably mistaken in their belief that what they did was appropriate and in line with established law. I could interrupt just one second. Now we're to the point, I think, where we started with my questioning, is if you assume the facts, and just have to, leaving aside the question of what's in the record, what's not in the record, let's assume the facts as asserted by the plaintiff and borne out by the record presented to this Court, that he's compliant, he's on the ground, he maces twice, he said, relax, and then sufficient force is applied by one or two officers to his back to cause back injuries. Isn't that a tribal issue of fact, that it gets beyond qualified immunity? Why not? I don't think it is, Your Honor. What the record establishes is that the facts that you've articulated. That's my hypothetical. I can assume that. Isn't that enough? Let's take it two steps. I know you want to fight on the facts, but I just want to know what your theory is. If those are the facts, are you still arguing qualified immunity, or are you saying That would get you to a trial to resolve the facts, and the record doesn't support that. I know that wasn't clear in my questioning, but I'm trying to get to your theory. No, I understand, Your Honor, and if I can, I think qualified, I would submit to the Court that qualified immunity still applies. I do disagree with you about your characterization of what the evidentiary record supports. Let me put it as a hypothetical. Okay. That if you have a compliant person on the ground in a fetal position and gets maced twice and has sufficient force applied to his back that causes him multiple back surgeries, is that a triable issue of fact on excessive force? Your Honor, I'm not even sure I'd consider it triable. I think if he's compliant, he's in handcuffs, he's on the ground not resisting, and then he's pepper sprayed, and then they sit on his neck, then absolutely that's an issue of whether or not that's excessive force. All right. Now, tell me why the record doesn't support that. I have four seconds to do that. Yeah, no, you can answer it. The fact is what the record supports is this. From the plaintiff's standpoint, Officer Theobald goes to the ground and they're connected. He admits that the officers have a right to believe at that point that something's going on. His compliance is not that at no time was he trying to resist, but he admits that the officers are trying to pull his arms out, that there is resistance there, at least from their perspective. So you look at it in the light most favorable to him. Correct. He's not trying not to get his arms out, but the officers can't get his arms out. Okay? And so that's, again, in the light most favorable to him. It's not that he's not trying to get his arms out, but they can't pull them out. In that situation, pepper spray is applied to him from one of the officers who's trying to get the arm out. Well, let me just read it to you. It says, Clark's trying to let him go. He finally lets go, and then Clark's got me in a choke hold, and we go down on the front porch. He's on my back, and Theobald's trying to get my left arm out, which is what you're talking about. So he tells Clark to mace me. So Clark maces me and squirts it on my forehead, and at this time I'm saying, hey, fellas, relax. He goes on to describe that this is uncomfortable, calm down, and then he maces me again. He drops his mace can, or he maces him a second time, and then he goes on his back. Then they're on his back again, according to him. Now, that's just what he says. If we take this testimony and construe it in the light most favorable, why is it not an issue of fact? Because, first of all, he's not in handcuffs at that point. His testimony is that he's in handcuffs. They're still trying to get him in handcuffs. And so the question becomes, then, under established law, are officers entitled to use mace? Or pepper spray? I grant you the first one. But how about the second one, when he says, relax, stop? Then, according to him, he gets maced again, and they put the knee in the back with force sufficient to cause the injury. If you just take away everything else in the case, that's the part that concerns me. Correct, Your Honor, and I appreciate that. Again, what I would note to the Court is that at that point, even from his testimony that you've read, they're still in the struggle to get him into custody. And the question is, what kind of force, then, can they use to do that? And if the first pepper spray, he doesn't say, if the first pepper spray, my hands were freed and they put them behind me and I was handcuffed and we were done. The fact that he's saying relax and calm down to the officers after he's started the fight doesn't necessarily mean that they are now required to say, oh, okay, I'm sorry, and back away. And all I'm indicating to the Court is that in a clearly established law from the officer's standpoint, given all the information they had, given these circumstances, and what he admits the officers could have understood was going on, that the law doesn't say that what they do is inappropriate, because it's not that he's handcuffed, compliant, then they do these things to him. It's instead in the context of them struggling to get him into custody when they perceive, from his own admission they perceive, that he had started an altercation, use forcing his officer, and something was occurring between him and another officer as they're responding to his aid. I don't think he says that he started it. I think he basically describes a situation where they're tripping over him and, you know, something. No, he doesn't say he started it. Right. But he admits, and we've provided the Court that citation, he admits that the officers could have believed something was going on with this going down and him holding on to the officer as they went down. He concedes that perception. And what we would submit to the Court, what we argued to Judge Sandoval was that the officer, I mean, that goes to what's objectively reasonable. When a person standing outside could have believed was occurring, these two officers in a tense situation could believe from his own admission that a fight's occurring between these two, and they go to his aid and try and get him into custody. And that's where the pepper spray occurs in that context, trying to get his arms out behind him, trying to get him into handcuffs. Thank you. I apologize for going over my hand. Oh, no, no. You answered my question. Thank you. Judge Wallace, I wanted to recant my one comment about you regarding the issue of whether or not the judge could have ruled on the issue of qualified immunity as to the mistaken identity. I don't believe that he could have at that point either. Basically, I believe that still under the using the Saucere versus Katz analysis, that you've got clearly established rights and issues of fact here, which I think would have precluded him even at that point from addressing that issue. If I may, though, I'd like to ---- Castle, I have a question about what is in the record. If all of your best evidence was in your office but wasn't presented in connection with the summary judgment motion, I think it doesn't do you any good for the judge. I mean, the judge wouldn't have made a mistake if the judge acted on 50 percent of the information. So was the material that Judge Thomas was reading to you, was that portion of the deposition in which your client was describing what happened at the time of the arrest, was that in front of the judge at the time he made his decision? Again, I don't have the record in front of me here, Your Honor, but I believe that the information that we provided to them came in the form of, I think it was in our expert's report, his testimony, which contained the factual encounters regarding what had occurred. I believe that defense counsel may have also included that information in either there. I think the answer is no. The deposition is not in the record. No, I believe that we have it, but I just don't have it in front of me to see. That seems to me quite essential. Is it enough for you to present some third party's analysis of what they read, or don't you have to have admissible evidence concerning the events from the point of view that you want the court to consider them? Oh, I agree, and I believe that you've read the salient portions of the deposition transcript, which has been our argument this entire time. Okay, was that in front of the judge or not? I believe it was, but as I sit here today, I don't have it in front of me. All of the information should have been in front of the judge. Doesn't that make a complete difference? If that deposition was not in front of the district judge, how can we say that the judge made a mistake? And it's generally my pattern and practice when I do opposition to the business summary judgment is to attach preferably the entire transcript. Well, I understand that, but I just want you to assume for the sake of my question that we conclude that for whatever reason it wasn't attached, then how can we possibly consider it? Well, I believe that we've got other portions of there. If that excerpt alone wasn't attached, I believe that we've still cited to other areas of the transcript and testimony, which create those triable issues there, citing to the deposition testimony and the testimony of the independent eyewitnesses who also agree with the statements that they heard from Mr. Bernard asserting and claiming that he's trying to tell them to calm down, just relax. I think you're creating yourself a problem because if you're indicating that the only showing of this deposition is through your expert, your expert's not an expert on facts, he's an expert in other areas, and we've never accepted what they say factually as facts. So you'd have to have the deposition itself or have it before the court in some way. And is there some place for that deposition where you can...
judges: Wallace, Thomas, Graber